**08 C 405**

**JUDGE GETTLEMAN**
**MAGISTRATE JUDGE VALDEZ**

# EXHIBIT B

| | |
|---|---|
| 2120 – Served | 2121 – Served |
| 2220 – Not Served | 2221 – Not Served |
| 2320 – Served By Mail | 2321 – Served By Mail |
| 2420 – Served By Publication | 2421 – Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-10M-1-07-05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

(Name all parties)

Paluzzi, Susan

v.

Cellco Partnership d/b/a Verizon Wireless and mBlox, Inc.

}

07CH37213

No. _____

TO: Cellco Partnership d/b/a Verizon Wireless
C/o Corporation Service Company
2711 Centerville Road Ste 400
Wilmington, DE 19808

### SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ___802___, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 44146

Name: Myles McGuire

Atty. for: Plaintiff

Address: 53 West Jackson Boulevard

City/State/Zip: Chicago, Illinois 60604

Telephone: 312-589-6370

Service by Facsimile Transmission will be accepted at: _____

WITNESS, DEC 17 2007

DOROTHY BROWN
CLERK OF CIRCUIT COURT

_____
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 (            ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, _CHANCERY_ DIVISION

(Name all parties)

Paluzzi, Susan

v.

Cellco Partnership d/b/a Verizon Wireless and mBlox, Inc.

} **U7CH37213**

No. _____

TO: mBlox, Inc.
C/o National Registered Agents, Inc.
160 Greentree Drive Suite 101
Wilmington, DE 19904

## SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _802_, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL  60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL  60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL  60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL  60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL  60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

DEC 1 7 2007

Atty. No.: _44146_

Name: Myles McGuire

Atty. for: Plaintiff

Address: 53 West Jackson Boulevard

City/State/Zip: Chicago, Illinois 60604

Telephone: 312-589-6370

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _DOROTHA BROWN_,
CLERK OF CIRCUIT COURT

_____
Clerk of Court

Date of service: _____,
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)  (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

(Rev. 12/4/00) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT /CHANCERY DIVISION

Paluzzi, Susan

                                      **Plaintiff**

              **v.**

Cellco Partnership and mBlox, Inc.

                                        **Defendant**

07CH37212

**Case No.** _____

## CHANCERY DIVISION CIVIL COVER SHEET

    A Chancery Division Civil Cover Sheet shall be filed with the initial complaint in all actions filed in the Chancery Division. The information contained herein is for Administrative purposes only and shall not be introduced into evidence. Please check the box in front of the appropriate category which best characterizes your action being filed.

| | | |
|---|---|---|
| 005 | _____ | Administrative Review |
| 006 | _____ | Change of Name |
| 001 | ✓ | Class Action |
| 002 | _____ | Declaratory Judgment |
| 004 | _____ | Injunction |
| 008 | _____ | Mechanic's Lien |
| 003 | _____ | Mortgage Foreclosure |
| 007 | _____ | General Chancery |

| | | | | |
|---|---|---|---|---|
| _____ | Accounting | | _____ | Partition |
| _____ | Arbitration Awards | | _____ | Quiet Title |
| _____ | Certiorari | | _____ | Quo Warranto |
| _____ | Dissolution of Corporation | | _____ | Redemption Rights |
| _____ | Dissolution of Partnership | | _____ | Reformation of a Contract |
| _____ | Equitable Lien | | _____ | Rescission of a Contract |
| _____ | Interpleader | | _____ | Specific Performance |
| _____ | Mandamus | | _____ | Trust Construction |
| _____ | Ne Exeat | | _____ | Other _____ |

**By:** _____

                        **Attorney**               **Pro Se**

**Atty. No.:** 44146 _____

**Name:** KamberEdelson, LLC _____

**Atty. for:** Plaintiff _____

**Address:** 53 West Jackson Boulevard _____

**City/State/Zip:** Chicago, Illinois 60604 _____

**Telephone:** (312) 589-6370 _____

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-10M-1-07-05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

(Name all parties)

Paluzzi, Susan

v.

Cellco Partnership d/b/a Verizon Wireless and mBlox, Inc.

} 07CH37213

No. _____

TO: Cellco Partnership d/b/a Verizon Wireless
C/o Corporation Service Company
2711 Centerville Road Ste 400
Wilmington, DE 19808

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

| ☐ District 2 - Skokie | ☐ District 3 - Rolling Meadows | ☐ District 4 - Maywood |
|---|---|---|
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ☐ District 5 - Bridgeview | ☐ District 6 - Markham | ☐ Child Support |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | 28 North Clark St., Room 200 |
| Bridgeview, IL 60455 | Markham, IL 60426 | Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 44146

Name: Myles McGuire

Atty. for: Plaintiff

Address: 53 West Jackson Boulevard

City/State/Zip: Chicago, Illinois 60604

Telephone: 312-589-6370

Service by Facsimile Transmission will be accepted at: _____

WITNESS, DEC 17 2007 _____, _____

DOROTHA L/OWN
CLERK OF CIRCUIT COURT

Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

_____
(Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

CCG N001-10M-1-07-05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____CHANCERY_____ DIVISION

(Name all parties)

Paluzzi, Susan

v.

Cellco Partnership d/b/a Verizon Wireless and mBlox, Inc.

No. _____

TO: mBlox, Inc.
C/o National Registered Agents, Inc.
160 Greentree Drive Suite 101
Wilmington, DE 19904

### SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

DEC 17 2007

Atty. No.: 44146

Name: Myles McGuire

Atty. for: Plaintiff

Address: 53 West Jackson Boulevard

City/State/Zip: Chicago, Illinois 60604

Telephone: 312-589-6370

WITNESS, DOROTHY BROWN
CLERK OF CIRCUIT COURT

_____
Clerk of Court

Date of service: _____, _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)    (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

SUSAN PALUZZI, individually and on behalf )
of a class of similarly situated individuals, )
                                        )
               Plaintiff, )
                                        )    No.
               v. )
                                          )
CELLCO PARTNERSHIP, a Delaware General )
Partnership d/b/a Verizon Wireless, and MBLOX, )
INC., a Delaware corporation. )
                                          )
                                          )    **Jury Trial Demanded**
               Defendants. )
------------------------------------------------------------x

### CLASS ACTION COMPLAINT

1.     Plaintiff Susan Paluzzi brings this class action complaint against Defendant

Cellco Partnership d/b/a Verizon Wireless ("Verizon") and Defendant mBlox, Inc. ("mBlox")

seeking to stop Defendants' unlawful practice of charging cellular telephone customers for

products and services the customers have not authorized, a practice which has resulted in

Defendants unlawfully collecting money from consumers statewide, and to obtain redress for all

persons injured by their conduct. Plaintiff, for her class action complaint, alleges as follows

upon personal knowledge as to herself and her own acts and experiences, and, as to all other

matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

2.     Plaintiff Susan Paluzzi is a citizen of Illinois.

3.     Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") is a Delaware

general partnership with its principal offices in the State of New Jersey. Its partners include

Verizon Communications, Inc., a Delaware corporation with its principal place of business in the

State of New York and Vodafone Group Plc, an English public limited company with its principal place of business in England. Verizon does business throughout the State of Illinois and this county.

4.    Defendant mBlox, Inc. ("mBlox"), is an aggregator and operates a mobile transaction network that processes mobile payments on its behalf and on behalf of carriers and third party mobile content providers. mBlox is a Delaware corporation with its headquarters and principal place of business in the State of California. mBlox does business throughout the State of Illinois and this county.

VENUE

5.    Venue is proper in Cook County because Defendants do business in Cook County.

CONDUCT COMPLAINED OF

6.    This case arises from two closely related phenomena. The first is the capability of most cellular telephones, not only to make and receive telephone calls, but also to send and receive text messages, including -- most significantly for present purposes -- "premium" text message services. These services, also known as "mobile content" include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio and participatory television).

7.    The second underlying phenomenon of this case constitutes its very core. That is, just as providers of premium mobile content deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by the wireless carriers, such as Verizon. Further, because the mobile

2

content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they do so with the help of third-party companies, such as mBlox, known as aggregators. These aggregators act as middle-men, representing numerous mobile content providers in arriving at the agreements that allow them to use the billing and collection mechanisms of the wireless carriers. In turn, both the aggregators and the wireless carriers are compensated for their services to the mobile content providers by retaining a substantial percentage of the amount each premium mobile content transaction.

8.      The rapid and largely unplanned growth of the premium mobile content industry has led both to the above-described structure and to a disastrous flaw within it. That flaw -- understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content providers such as the instant defendants -- is an open secret within the industry, but little understood outside of it. In short, the billing and collection systems established by companies including Defendants in aid of the premium mobile content industry that enriches them are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills.

9.      As Defendants also know, significant amounts of money have been collected on account of such unauthorized charges for premium mobile content in the industry over the last few years. And while it has always been within the power of companies such as Defendants to institute simple and effective measures that would prevent this, they have instead knowingly maintained the very system that has allowed these erroneous charges. Indeed Defendants have reaped and retained their respective shares of the improper collections.

10.     While the total sales in Illinois of premium mobile content in 2007 amount to a significant sum, the business is still in its infancy. The burgeoning industry has already

3

expanded from ordinary ringtones into mass media-related products such as interactive radio and participatory voting at television and concert events and, most recently, into services that enable cell phones to function as credit cards. Unchecked, Defendants' practices will injure an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

10.    Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only thing a mobile content provider needs to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

11.    Armed with only a cell phone number, the mobile content provider can simply provide that number, along with an amount to be charged, to a billing aggregator (such as mBlox). The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

12.    Because the protections normally present in consumer transactions -- such as signatures and private credit card numbers -- are absent from this process, the likelihood of false charges increases enormously. And because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude. Mobile content providers have powerful financial incentives to collect as many cell phone numbers as possible but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

4

### Aggregators' Role In the Scheme to Defraud

13.     In order to tap into the emerging wireless content marketplace and make content services available to wireless consumers, content providers must first obtain access to wireless carriers' mobile communications networks and frequently do so by "partnering" with aggregators -- intermediary companies such as mBlox that offer content providers (its "content provider partners") direct access to the carriers through existing relationships. This allows content providers to focus on developing and marketing branded content, applications and programs while aggregators manage the complex carrier relationships, distribution, billing and customer service.

14.     As an aggregator, mBlox operates a mobile transaction network that helps companies develop, deliver, and bill for mobile content services to compatible mobile devices throughout the State of Illinois and the nation.

15.     By using their end-to-end technology platforms, their relationships with U.S. carriers, and other value-added services, these aggregators have forged a crucial link between the wireless carriers and the mobile content providers. They have enabled the transformation of wireless into a marketing, content delivery, and collections process, while carving out a profitable role for themselves as very critical middlemen in this rapidly growing industry.

16.     mBlox has developed a vast distribution system that integrates into the wireless networks of some of the largest wireless carriers nationwide, providing direct connections to more than 500 mobile operators, including Verizon, Cellular One, Sprint Nextel, Alltel, US Cellular, among many others. As a result, mBlox is able to reach and bill wireless subscribers nationwide.

5

17.    While aggregators such as mBlox charge their content provider customers some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile content services offered by a content provider, the aggregator and/or the content provider cause said charge to be billed directly on the cellular telephone bill of the carrier's customer who currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

18.    The carrier then bills and collects the charge from its current subscriber, retains about a portion of the proceeds as its "revenue share" and then remits the balance to the aggregator who has direct access to its network, e.g., mBlox, who retains a percentage of the balance in the form of its own "revenue share," and then remits the remainder directly to the mobile content provider (or, in some instances, to another aggregator who then retains a percentage of the balance in the form of its own "revenue share" and then remits the balance to its mobile content provider client).

19.    mBlox has in Illinois registered numerous transactions and processed significant amounts of dollars in transactions over recent years and have profited greatly from their arrangement with their carrier partners, aggregator partners and content provider partners.

20.    As mBlox knows, carriers such as Verizon routinely process charges for mobile content that have not been authorized by the charged party.

21.    mBlox has not only sanctioned this illegal billing, they have promoted it by negotiating and facilitating partnerships between the carriers and the mobile-content providers that contains few if any safeguards to prevent unauthorized charges.

6

22.    Indeed, if Defendants wanted to end this illegal billing, they could do so in an instant. All they would have to do to ensure that they are obtaining the consent of the charged party is agree to process a unique "access code" for each customer account, provided by the carrier to the account holder and his/her authorized representatives at the time it is opened, and require that it be produced anytime a third-party attempts to charge the account. If a matching access code is not provided, no charges would be included on the customer's billing statement.

23.    But instead of implementing such a simple safeguard, Defendants have intentionally created and maintained a system that encourages fraud at every step.

### The Carrier's Role In the Scheme to Defraud

24.    Verizon uses uniform form contracts ("Service Agreements") under which customers purchase cell phone services.

27.    As described above, Verizon's services include providing access to and billing for various third-party mobile content services such as ring tones, chat services, horoscopes, stock tips, weather alerts, participatory television, mobile payment services and other forms of software provided by hundreds of third-party vendors with names such as Ringaza and many others.

28.    Verizon has contracted with third-party providers such as Defendant mBlox to bill and collect from Verizon's customers the services provided by such third-party content providers, the charges for which are included directly on a customer's monthly wireless bill.

29.    The duty of good faith and fair dealing, a part of every contract, requires that Verizon not bill any customer for any good or service not authorized by the customer.

30.    Upon execution of said Service Agreements and activation of cellular telephone accounts, Verizon provides its customers a ten-digit cellular telephone number.

31.    As explained above, unbeknownst to its customers, Verizon frequently charges consumers for services that were never authorized.

32.    As a result, Verizon has for years been systematically, repeatedly and without authorization, billing its customers for purchase of products and services not agreed to by those customers. Verizon and third-party service providers have, on information and belief, profited significantly through this practice.

33.    Verizon's conduct is by no means accidental. As previously alleged, it knows that many of its cellular telephone customers dispute the claim the mobile content provider's claim that such customer consented to be charged for their mobile content services. Verizon further knows that it cannot authenticate such customer's authority to be billed for such mobile content charges. In light of its knowledge of these facts, Verizon's decision to continue to charge its customers for mobile content without taking steps to authenticate the representations of the mobile content providers that the customer's authority to be charged was obtained constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

34.    Because the amount Verizon is taking is small on an individual basis – as little as a few dollars to at most several hundreds of dollars per person -- and because of Verizon's vast resources and superior bargaining power, Defendants employ this scheme with the hope and expectation that its illegal conduct will go unpunished.

## THE FACTS RELATING TO NAMED PLAINTIFF

35.    On or about December 14, 2002, Plaintiff and her husband purchased new cell phone service for her personal use from an authorized Verizon sales representative.

8

36.    On that same day, in exchange for a Verizon cell phone service plan entitled America's Choice II Familyshare with 700 "anytime" minutes, Paluzzi agreed to pay Verizon $60 each month for a period of 12 months.

37.    Upon activating her cellular telephone account on or about December 14, 2004, Verizon provided Paluzzi a cellular telephone number.

38.    Beginning on or about September, 2007 and continuing through November, 2007, Paluzzi's cell phone account was charged for multiple unwanted mobile content services in the form of "premium" text messages from Defendants.

39.    At no time did Paluzzi authorize the purchase of these products and services offered by Defendants and at no time did Paluzzi consent to mBlox's sending of text messages to her cellular telephone.

40.    During the relevant time period, Defendants caused Paluzzi to be charged service charges in the amount of $9.99 for so-called "Premium" text messages provided by Defendants. For instance, on or about October 15, 2007, Defendants charged Paluzzi $9.99 twice for premium text message services.

41.    At no time did Paluzzi authorize Defendants or anyone else to bill her for these charges.

42.    At no time did Defendants verify Paluzzi's purported authorization of these charges and no time did Defendants provide a complete refund consisting of the premium text message charges, ordinary text messages, data charges and/or back interest. Nor did Verizon provide Paluzzi an assurance that such unauthorized charges would not appear in future billing periods.

## CLASS ALLEGATIONS

9

43.    Plaintiff brings this action on behalf of herself and two classes. Those classes are defined as follows:

A. The "Carrier Class": a class consisting of all Verizon wireless telephone subscribers in Illinois who suffered losses or damages as a result of Verizon billing for mobile content products and services not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the defendants, and (ii) any employee of a defendant.

B. The "Aggregator Class": a class consisting of all wireless telephone subscribers in Illinois who suffered losses or damages as a result of incurring charges on their cellular telephone bills from or on behalf of mBlox not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the defendants, and (ii) any employee of a defendant.

44.    The claims of Plaintiff are typical of the claims of all of the other members of the respective Classes.

45.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the respective classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Classes.

46.    Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal

10

litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

47.     Defendants have acted and failed to act on grounds generally applicable to the plaintiff and the other members of the respective Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

48.     The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the respective Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes.  Plaintiff and the other Class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

49.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Classes, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Carrier Class include but are not limited to the following:

(a)     Whether Verizon's conduct described herein is in breach of contract.

(b)     Whether Verizon's conduct described herein violates Computer Tampering in Violation of 720 ILCS 5/16D-3.

(c)     Whether Verizon's conduct described herein violates Illinois Consumer Fraud and Deceptive Business Practices Act.

50.     Common questions for the Aggregator Class include:

(a)     Whether mBlox has unjustly received money belonging to Plaintiff and the Aggregator Class and whether under principles of equity and good conscience, mBlox should not be permitted to retain it;

11

(b)    Whether mBlox tortiously interfered with contracts between Plaintiff and the Aggregator Class, on the one hand, and their wireless carriers, on the other hand, by causing them to be charged for products and services by their carrier that were unauthorized.

(c)    Whether mBlox's conduct described herein violates Computer Tampering in Violation of 720 ILCS 5/16D-3.

(d)    Whether mBlox's conduct described herein violates Illinois Consumer Fraud and Deceptive Business Practices Act.

## COUNT I
### (Breach Of Contract on behalf of the Carrier Class)

51.    Plaintiff incorporates by reference the foregoing allegations.

52.    Plaintiff and the Carrier Class entered into substantially identical agreements with Defendant Verizon whereby Plaintiff and the Verizon agreed to pay a certain sum of money in exchange for Verizon's activation of Plaintiff and the Verizon's cellular telephone account and its promise to provide various communication and related services to Plaintiff and the Carrier Class.

53.    Defendant Verizon expressly and/or impliedly agreed to provide Plaintiff and the Carrier Class with a cellular telephone number free of unauthorized charges for third-party products and services.

54.    Defendant Verizon further expressly and/or impliedly agreed to bill Plaintiff and the Carrier Class only for products or services the purchase of which they had authorized.

55.    Defendant Verizon further expressly and/or impliedly agreed to carry out its obligations in good faith and fair dealing.

12

56.     Defendant Verizon breached its contractual obligations by providing Plaintiff and the Carrier Class with cellular telephone accounts that included unauthorized charges for mobile content.

57.     Defendant Verizon further breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by thereafter billing Plaintiff and the Carrier Class for products or services, the purchase of which they never authorized.

58.     The aforementioned breaches of contract have proximately caused the Plaintiff and the Carrier Class economic injury and other damages.

## COUNT II
### (Restitution/Unjust Enrichment on behalf of the Aggregator Class)

59.     Plaintiff incorporates by reference the foregoing allegations.

60.     A benefit has been conferred upon mBlox by Plaintiff and the Aggregator Class. mBlox has received and retain money belonging to Plaintiff and the Aggregator Class resulting from their billing and collecting of significant sums of money in unauthorized mobile content charges.

63.     mBlox appreciates or have knowledge of said benefit.

64.     Under principles of equity and good conscience, mBlox should not be permitted to retain the money belonging to Plaintiff and the Aggregator Class which mBlox has unjustly received as a result of its actions.

## COUNT III
### (Tortious Interference with a Contract on behalf of the Aggregator Class)

65.     Plaintiff incorporates by reference the foregoing allegations.

66.     Plaintiff and the Aggregator Class had contractual relationships with their wireless carriers whereby they agreed to pay a certain sum of money in exchange for activation

13

of their cellular telephone accounts and their carriers' promise to provide various communication and related services to Plaintiff and the Aggregator Class and to bill Plaintiff and the Aggregator Class only for products or services the purchase of which they had authorized.

67.     mBlox knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

68.     mBlox intentionally interfered with said contractual relationship through improper motives and/or means by knowingly and/or recklessly continually causing to be placed on the cellular telephone bills of cellular telephone owners across the nation unauthorized charges.

69.     Plaintiff and the Aggregator Class suffered loss as a direct result of the conduct of mBlox.

## COUNT IV
### (Computer Tampering in Violation of 720 ILCS 5/16D-3 on behalf of both Classes)

70.     Plaintiff incorporates by reference the foregoing allegations.

71.     The cellular phones owned by Plaintiff and the other class members are sophisticated electronic devices which accept, process, store, retrieve and output data, and contain many (if not most) of the same capabilities and equipment as traditional desktop computers (in addition to cellular radio signal processing technology). These cellular phones are computers under the definition of 720 ILCS 5/16D-2(a).

72.     Likewise, the mobile content alleged in this Complaint is a program under the definition of 720 ILCS 5/16D-2(b); a series of coded instructions or statements accepted by class members' cellular phones, which cause the computer to process data and supply the results of the data processing (by, inter alia, displaying the mobile content).

14

73.    Plaintiff and the other class members' cellular service will be terminated unless they pay additional fees for the receipt of the unauthorized mobile content, whether they authorized that mobile content or not. Through the conduct alleged above, Defendants violate 720 ILCS 5/16D-3(a)(4) by knowingly participating in and/or facilitating the insertion of mobile content into class members' cellular phones without the permission of the cellular phones' respective owners, knowing and/or having reason to believe that the insertion of the unauthorized mobile content will or may cause loss to the users of that cellular phone.

74.    Plaintiff and the other class members are damaged by those violations. Defendants' violations of 720 ILCS 5/16D-3(a)(4) cause the Plaintiffs and the other class members to pay charges for mobile content services to which they did not consent. Defendants' violations of 720 ILCS 5/16D-3(a)(4) further damage Plaintiffs and other class members by causing them to pay falsely inflated cellular service bills to the carrier Defendant, as well as the lost time required to sort, read, discard and attempt to prevent future charges for unwanted mobile content services, and lost storage space, connectivity, and computing resources on the cellular phones.

75.    Plaintiff, on her own behalf and behalf of the other class members, seeks appropriate relief (including damages in an amount to be determined at trial, and injunctive relief or other equitable relief, such as an accounting, and disgorgement of fees obtained while these violations were ongoing), as well as reasonable attorney's fees and other litigation expenses, against Defendants under 720 ILCS 5/16D-3(c).

## COUNT V
### (Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act on Behalf of both Classes)

76.    Plaintiff incorporates by reference the foregoing allegations.

15

77. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") declares unlawful "any [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

78. Defendants violated, and continue to violate this proscription through their conduct alleged above, as set forth above.

79. Defendants, through their acts of unfair competition, have obtained money from Plaintiff and members of the proposed Classes. Plaintiff and the members of the Classes ask that this Court restore this money to Plaintiff and enjoin Defendants from continuing their illegal practices.

80. Such conduct is ongoing and continues to this date. Plaintiff, the Class members and the general public are therefore entitled to the relief described herein.

WHEREFORE, Plaintiff Susan Paluzzi, on behalf of herself and the Classes, prays for the following relief:

    a.    Certify this case as a class action on behalf of the Classes as defined above and appoint Susan Paluzzi Class Representative, and appoint KamberEdelson, LLC as lead counsel;

    b.    Declare that the actions of Verizon, as set out above, constitute a breach of contract;

    c.    Enter judgment against Verizon for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiff and the Carrier Class exemplary damages;

d.   Declare that the actions of mBlox, as set out above, constitute unjust enrichment and tortious interference with a contract;

e.   Enter judgment against mBlox for all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct, and if its conduct is proved willful award Plaintiff and the Aggregator Class exemplary damages;

f.   Declare that the actions of mBlox and Verizon, as set forth above, as well as in other respects, constitute a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and Computer Tampering in Violation of 720 ILCS 5/16D-3.

g.   Award Plaintiff and the Classes reasonable costs and attorneys' fees;

h.   Award Plaintiff and the Classes pre- and post-judgment interest;

i.   Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

j.   Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

December 17, 2007

Susan Paluzzi, individually and on behalf of a class of similarly situated individuals

One of her attorneys

Jay Edelson
Myles McGuire
John Blim (Of Counsel)
KAMBEREDELSON, LLC
53 West Jackson Boulevard
Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370
Firm ID: 44146

17