UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

SUSAN PALUZZI, individually and on behalf )
of a class of similarly situated individuals, )
                                      )
                Plaintiff, )
                                      ) Case No. CV 08  C 405
v.                                    )
                                    ) **Judge Robert Gettleman**
CELLCO PARTNERSHIP, a Delaware )
General Partnership d/b/a/ Verizon Wireless, ) **CLASS ACTION**
and MBLOX, INC., a Delaware corporation, )
                                      )
                Defendants. )
                                      )

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

## I.    Introduction

In its removal papers, Defendant Cellco Partnership d/b/a Verizon Wireless ("Defendant")[1] claims that the amount in controversy in this action exceeds $5,000,000. (Notice of Removal ¶¶14-17). However, Defendant fails to provide sufficient evidence to support this claim in its Notice of Removal. While Defendant provides its total number of mobile content service subscribers in Illinois, and the total amount they have been billed since Defendant began offering mobile content services, this information does not provide a sufficient basis for determining how much is at stake in *this* controversy, given Paluzzi's claims. Therefore, removal was improper. Further, because Defendants "lacked an objectively reasonable basis for seeking removal," Defendants should be required to pay Plaintiff's fees and expenses in bringing this motion.

## II.    Facts

---
[1] Defendant mBlox did not join in Defendant Verizon's notice of removal.

Plaintiff Susan Paluzzi ("Paluzzi"), on behalf of herself and two classes, brings the underlying action against Defendant seeking to stop Defendant's practice of causing cellular telephone customers to be billed for unauthorized mobile content services, and to obtain redress for all persons injured by their conduct.

Mobile content services, also known as premium text message services, include services such as ring tones, sports score reports, weather alerts, horoscopes, and interactive radio, delivered to customers' mobile devices. (Compl. ¶6.) Mobile content service providers charge and collect from their customers by "piggybacking" on the cell phone bills sent out by the wireless carriers, such as Defendant. (Compl. ¶7.) To accomplish this, however, mobile content service providers must partner with third-parties known as aggregators, such as Defendant mBlox. (Compl. ¶7.) Aggregators such as mBlox act as middlemen between the numerous mobile content service providers and the carriers, and facilitate the service providers' access to the carriers' mobile communications networks, as well as the carriers' billing and collection mechanisms. (Compl. ¶7.) When a mobile content service provider provides its services to a particular carrier's customer, the aggregator with which the service provider has contracted, and the carrier whose network the consumer uses, each retain a portion of the mobile content service charge collected from the customer. (Compl. ¶18).

Paluzzi's claim stems from the manner in which Defendant has set up and maintained its billing system, which results in unauthorized and erroneous charges for mobile content services being placed on customers' bills. (Compl. ¶8-9.) Specifically, Defendant's billing system does not require a mobile content provider or aggregator to provide any information beyond a customer's cell phone number in order to cause a carrier's customer to be billed for services and products. (Compl. ¶¶10-11.) Charges for mobile content services often appear with minimal, cryptic identifying information on the consumer's bill. (Compl. ¶11.) Therefore, Defendant's failure to require any kind of safeguard—even a simple safeguard such as requiring a customer's signature or private access code—greatly increases the likelihood of false charges. (Compl. ¶12.)

In Paluzzi's case, Defendant twice billed her $9.99 for "premium" mobile content which she neither wanted nor authorized. (Compl. ¶40.)

### III.  Applicable Statutory Law

CAFA provides, putting aside certain exceptions that are not applicable, "the district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," there are at least 100 members of the putative class, and at least one member of the putative class is a citizen of a state different from the defendant. 28 U.S.C. § 1332(d)(2).

### IV.  Argument

#### A.  Removal statutes such as 28 U.S.C. § 1332(d)(2) are strictly construed.

Removal statutes are to be "construed narrowly and any doubts about the propriety of removing a particular action should be resolved against allowing removal." *Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 224 F.3d 708, 715-16 (7th Cir. 2000). *See also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S. Ct. 868, 872, 85 L. Ed. 1214 (1941)(removal statutes are construed strictly); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)("Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum."); and *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007)(removal statute should be narrowly construed).

#### B.  Defendant has failed to meet its burden of establishing that the amount in controversy exceeds $5,000,000.

It is well established that the proponent of federal jurisdiction bears the burden of establishing removal jurisdiction. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447-448 (7th Cir. 2005), citing *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir.1997) and *Smith v. American General Life & Accident Insurance Co.*, 337 F.3d 888, 892 (7th Cir. 2003). "Whichever side chooses federal court must establish jurisdiction; it is not

enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction." *Brill*, 427 F.3d at 447. CAFA has not shifted this burden. *Id*. at 448. Therefore, as the proponent of federal jurisdiction, defendant bears the burden of establishing removal jurisdiction. "[P]art of the removing party's burden is to show not only what the stakes of the litigation could be, but also what they *are* given the plaintiff's actual demands." *Id*. A removing party must prove by a preponderance of the evidence that the amount in controversy exceeds the threshold in order to meet this burden. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006). In the instant case, Defendant has failed to meet this burden.

In *Brill* the Seventh Circuit considered whether defendant Countrywide had met its removal burden of proving the amount in controversy exceeded $5,000,000. *Brill*, 427 F.3d at 447-449. In that case, the plaintiff alleged Countrywide violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by sending fax advertisements, where the Act provided a court could award up to $500 per violation, and the award could be trebled if the violation was willful. *Id*. at 447-48. The Court held Countrywide had met its burden in that case, where a Countrywide employee conceded he had faxed at least 3,800 advertisements, even though it was not certain whether willfulness would be established in the case. *Id*. at 447-49.

Here, unlike in *Brill*, Defendant Verizon has not provided sufficient information to establish that the amount in controversy exceeds $5,000,000. Defendant has revealed that it has 400,000 wireless customers in Illinois who subscribe to premium text message services, and that, "since inception," Illinois subscribers have been billed $13,000,000 for mobile services. (Notice of Removal ¶¶12, 15.) However, Paluzzi does not claim that the sum total of every premium text message fee ever charged to an Illinois Verizon wireless customer is unauthorized. Rather, Paluzzi alleges Defendant's billing system has resulted in unauthorized charges being placed on the bills of *some* of its customers. (Compl. ¶34.) By way of analogy, that's akin to a debate on the scope of illegal immigration in the U.S. and stating that the total number of U.S. immigrants (both legal and illegal) combined last year was "X". Defendants have failed to identify even a single indicator, such as the percentage of records reflecting customer complaints about such

mobile content charges, which may reasonably approximate the amount of the *unauthorized* portion of the total charges.

Defendant includes potential punitive damages and attorneys' fees in establishing the amount in controversy. (Notice of Removal ¶¶ 16, 17.) However, amounts for punitive damages are derived from the amount of compensatory damages awarded. See *Buller v. Owner Operator Independent Driver Risk Retention Group, Inc.*, 461 F. Supp. 2d 757, 763 (S.D. Ill 2006)(in calculating the amount in controversy, court considered punitive damages in a ratio of two to three times out-of-pocket damages). Where Defendants have made no attempt to calculate a potential damages award, it is not possible to determine what a punitive damages award might be.

In addition, while Defendant correctly notes that attorneys' fees are included in the amount in controversy calculation, in the Seventh Circuit, amounts for attorneys' fees are calculated at the time federal jurisdiction is invoked. *Atteberry v. Esurance Ins. Services, Inc.*, 473 F. Supp. 2d 876, 877 (N.D. Ill. 2007)("only fees already incurred at the time that federal jurisdiction is invoked, not anticipated fees, may be counted toward the requisite amount in controversy"). Therefore, it is unlikely that, at this point, Paluzzi's attorneys' fees contribute any substantial portion of the $5,000,000 threshold; certainly Defendant has not established that they do. (See Notice of Removal ¶17.)

Therefore, Defendant has not provided sufficient evidence to establish that the amount in controversy in this case exceeds $5,000,000, and removal was improper.

### C. **Attorneys' Fees and Costs Should Be Awarded**

Because Defendant's removal lacked an objectively reasonable basis for seeking removal, the Court should award costs and fees to the plaintiff. See, *Lott v. Pfizer, Inc.* 492 F.3d 789 C.A.7 (Ill.), 2007 (explaining that plaintiff is entitled to fees if defendant "lacked an objectively reasonable basis for seeking removal.")

Dated: February 13, 2008

Respectfully submitted,

KamberEdelson, LLC

By: /s/ Myles McGuire
MYLES MCGUIRE
One of the Attorneys for Susan Paluzzi,
individually and on behalf of a class of
similarly situated individuals

JAY EDELSON
MYLES MCGUIRE
ELIZABETH MACKEY (*PENDING PRO HAC VICE*)
JOHN BLIM (Of Counsel)
KAMBEREDELSON, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370