**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN PALUZZI, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 08-C 405 |
| | ) | Judge Robert Gettleman |
| CELLCO PARTNERSHIP, a Delaware General Partnership d/b/a Verizon Wireless, and MBLOX, INC., a Delaware corporation, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANT CELLCO PARTNERSHIP'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") hereby opposes the Motion to Remand filed by Plaintiff Susan Paluzzi.

## INTRODUCTION

This is a putative class action against Verizon and Defendant mBlox, Inc. ("mBlox") on behalf of Illinois wireless telephone subscribers for an alleged "practice of charging cellular telephone customers for products and services the customers have not authorized." (Compl. ¶ 1.) Verizon denies Plaintiff's claims and further denies that it has engaged in any improper or unlawful conduct, or that Plaintiff or any member of the purported class has suffered damage or injury of any kind. For purposes of removal, however, the issue is "*what the plaintiff is claiming (and thus the amount in controversy between the parties)*, not whether plaintiff is likely to win or be awarded everything he seeks." *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 449 (7th Cir. 2005) (emphasis added).

Verizon timely removed the action to this Court on January 17, 2008, based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which grants district courts

original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and any member of the class of plaintiffs is a citizen of a State different from any defendant. Plaintiff has now moved to remand based solely on her contention that Verizon has failed to demonstrate by a preponderance of the evidence that this action places $5 million in controversy. Plaintiff's narrow view of her claims for purposes of her remand motion, however, is refuted by the very allegations she levels against Defendants in her Complaint.

Plaintiff's Complaint clearly places at issue Verizon's entire system for billing for mobile content to customers in the State of Illinois and thus all charges that Verizon has collected from those customers. Specifically, she alleges that Verizon has "for years been systematically, repeatedly and without authorization, billing its customers for products and services not agreed to by those customers" and that its conduct is "by no means accidental." (Compl. ¶¶ 32, 33.) Indeed, Paragraph 33 alleges that "Verizon further knows that it cannot authenticate such customer's authority to be billed for such mobile content charges." (Compl. ¶ 33.) If Verizon cannot authenticate a customer's authorization, then every customer can argue that all charges are unauthorized because they are unverifiable. And that is precisely what Plaintiff alleges in her Complaint. Plaintiff does not and cannot dispute that Verizon's total charges for mobile content to wireless subscribers in Illinois exceeds $13 million. Nor can she dispute that carriers other than Verizon charged customers additional amounts for mobile content provided through mBlox. Accordingly, this case plainly falls within the scope of CAFA's grant of federal jurisdiction.

Faced with the unambiguous allegations of her Complaint and the undisputed size of the charges she has put at issue, Plaintiff now insists that the class she seeks to represent includes only those customers whose charges are ultimately deemed unauthorized. However, given her sweeping allegations in the Complaint, Plaintiff cannot then seek to avoid CAFA removal by gerrymandering her class definition to make it dependent on an ultimate finding of liability (i.e., limiting it to those who can ultimately **prove** that their charges were unauthorized, which is the ultimate issue to be decided on the merits here). If this were so, the provisions of CAFA would be rendered meaningless since any Plaintiff could avoid CAFA removal by limiting the size of

the class asserted to those who are ultimately found to have a claim – which by definition is undefinable at the outset of the case.  What governs are the Plaintiff's allegations, rather than any ultimate determination of liability (or lack thereof).

Moreover, **even** under Plaintiff's constricted (and unreasonable) view of her allegations, the amount in controversy still easily exceeds $5 million.  In her Complaint, Plaintiff stresses that Verizon imposes unauthorized charges on wireless customers on a regular basis.  Indeed, the Complaint alleges that Verizon imposes such charges, "routinely," "frequently," and "systematically."  Plaintiff makes similar allegations with respect to mBlox.  Moreover, taking into consideration her prayer for punitive damages, should Plaintiff succeed in showing that the conduct at issue warrants imposition of such damages, she would only have to recover a small fraction of the total mobile content charges billed to Verizon and mBlox customers in order to meet the $5 million threshold.  Having alleged that Verizon routinely and systematically imposes unauthorized charges, Plaintiff cannot escape federal jurisdiction by denying her own allegations and contending now that such unauthorized charges are rare and minor.

Accordingly, for these reasons, and for the reasons set forth more fully below, the Court should deny Plaintiff's motion for remand.

## PLAINTIFF'S ALLEGATIONS

As noted above, Plaintiff generally alleges that Verizon maintains a "practice of charging cellular telephone customers for products and services the customers have not authorized." (Compl. ¶ 1.)   In particular, Plaintiff challenges Verizon's billing practices with respect to mobile content—known as premium messaging services—such as ringtones, weather alerts and stock tips.  (Compl. ¶ 6.)  The content for these services are created by third parties—known as content providers—and are delivered to cell phone subscribers through premium messaging services.

In general, these mobile content services offer a premium message for a certain monthly fee.  (Compl. ¶¶ 17-18.)  The mobile content—such as weather reports, stock tips, and ringtones—is delivered to the subscriber's cell phone via an "aggregator" such as mBlox.

(Compl. ¶ 7.)  The "aggregator" works with "mobile content providers in arriving at the agreements that allow them to" bill through the carriers.  (*Id*.)  The carrier, such as Verizon, then adds the charge for the mobile content to the subscriber's monthly cell phone bill.  (Compl. ¶ 17.)

Plaintiff contends that "Verizon has for years been systematically, repeatedly and without authorization, billing its customers for purchases of products and services not agreed to by those customers."  (Compl. ¶ 32.)  Plaintiff alleges that "Verizon's conduct is by no means accidental." (Compl. ¶ 33.)  Rather, according to Plaintiff, "Verizon's decision to continue to charge its customers for mobile content without taking steps to authenticate the representations of the mobile content providers that the customer's authority to be charged was obtained constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money." (*Id*.)  According to Plaintiff, Verizon "cannot authenticate [a] customer's authority to be billed for [] mobile content charges."  (Compl. ¶ 33.)  Thus, Plaintiff unambiguously alleges that Verizon's billing system *as a whole* is "illegal" and that Verizon cannot establish that *any* customer in fact authorized charges for premium content.  Plaintiff alleges that the challenged practices are "inflicting damages of an untold magnitude."  (Compl. ¶ 9.)

Plaintiff seeks to represent a putative class comprised of all wireless subscribers in Illinois who were harmed by Verizon's billing practices.  (Compl. ¶ 43.)  Plaintiff also purports to represent a putative class comprised of all Illinois wireless telephone subscribers who incurred "charges on their cellular telephone bills from or on behalf of mBlox not authorized by the subscriber."  (*Id*.)  As the substantive allegations of her Complaint make clear, however, Plaintiff's class definitions are not consistent with her much broader allegations that Verizon's billing system as a whole is "unlawful," and that Verizon does not and cannot properly authenticate charges to any subscriber.

On behalf of Plaintiff and the putative classes, the Complaint attempts to state claims for: (1) breach of contract; (2) restitution/unjust enrichment; (3) tortious interference with contract; (4) computer tampering in violation of 720 ILCS 5/16D-3; and (5) violation of the Illinois

Consumer Fraud and Deceptive Business Practices Act.  The Complaint seeks, *inter alia*, compensatory damages, punitive damages, declaratory relief, restitution, attorney's fees, and costs.  (Compl. at 17-18.)

## ARGUMENT

### I.    CAFA PERMITS REMOVAL WHERE THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

CAFA grants district courts original jurisdiction over class actions where the proposed plaintiff class consists of 100 or more members, any member of the class of plaintiffs is a citizen of a State different from any defendant, and the amount in controversy exceeds $5 million "exclusive of interest and costs."  28 U.S.C. § 1332(d); *Hart v. Fedex Ground Package Sys., Inc.*, 457 F.3d 675, 677 (7th Cir. 2006).  Here, Plaintiff does not challenge the fact that the proposed class exceeds 100 members; nor does she challenge the existence of minimal diversity.  Rather, Plaintiff contends that Verizon has failed to demonstrate $5 million in controversy.

The removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence.  *See Brill*, 427 F.3d at 448.  The removing defendant, however, is not obligated to prove or disprove liability or damages with respect to the plaintiff or the putative class members.  Rather, "[t]he demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks."  *Brill*, 427 F.3d at 449.  "That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal."  *Brill*, 427 F.3d at 448.

"Where the complaint is silent as to the amount of damages and does not state the class will seek an amount below the jurisdictional minimum, the removing party must provide 'a good-faith estimate of the stakes' that is plausible and supported by a preponderance of the evidence."  *Hall v. Triad Financial Services, Inc.*, No. 07-CV-0184, 2007 U.S. Dist. LEXIS 75253, at *1 (S.D. Ill., Oct. 10, 2007) (quoting *Oshana v. Coca-Cola*, 472 F.3d 506, 511 (7th Cir. 2006).  To determine the amount in controversy, the court looks to the complaint and

additional evidence that sheds light on plaintiff's allegations at the time the case was removed. *See Harmon v. OKI Systems*, 115 F.3d 477, 479-80 (7th Cir. 1997). In particular, the court may examine evidence "in the form of affidavits from the defendants' employees" to determine if the removing party satisfied the amount in controversy requirement. *See Meriden Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006).

Accordingly, Verizon has satisfied its burden under CAFA by providing a "good faith estimate of the stakes" based on Plaintiff's allegations and evidence introduced by Verizon. *Hall*, 2007 U.S. Dist. LEXIS 75253, at *1.

## II.     PLAINTIFF'S BROAD ALLEGATIONS CLEARLY PLACE MORE THAN $5 MILLION IN CONTROVERSY

### A.     The Complaint Challenges Verizon's Entire System for Billing Mobile Content Charges

The amount in controversy in this action exceeds $5 million because Plaintiff's Complaint challenges Verizon's *entire* billing system for mobile content charges to Illinois wireless subscribers, and contends that Verizon cannot authenticate its charges for mobile content to *any* subscriber. These allegations unquestionably place the entire amount of Verizon's charges for mobile content at issue, and permit all Illinois subscribers to claim that their charges were improper because they were not authenticated by Verizon. Thus, according to Plaintiff, Verizon maintains a billing system that "encourages fraud at every step." (Compl. ¶ 23.) The Complaint further alleges that "Verizon has for years been systematically, repeatedly and without authorization billing its customers" for mobile content. (Compl. ¶ 32.) Indeed, Plaintiff claims that "Verizon's conduct is by no means accidental." (Compl. ¶ 33.) In particular, Plaintiff contends that:

> Verizon's decision to continue to charge its customers for mobile content without taking steps to authenticate the representations of the mobile content providers that the customer's authority to be charged was obtained constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

(*Id.*)

Plaintiff's Complaint thus unambiguously alleges that Verizon's entire mobile content billing system is "illegal" and that Verizon "***cannot authenticate [a] customer's authority to be billed for [] mobile content charges***." (Compl. ¶ 33 (emphasis added).) Indeed, the Complaint alleges that Verizon engaged in a "deliberate and willful scheme to cheat" customers by maintaining a system that fails to validate the authority of customers to accept mobile content charges. (*Id.*)

Plaintiff's effort to circumscribe her class claims to avoid CAFA jurisdiction thus is procedural gamesmanship that is squarely contravened by her own Complaint. The allegations of Plaintiff's Complaint clearly place all Verizon's charges to Illinois subscribers at issue.[1] *See Brill,* 427 F.3d at 449 (jurisdictional amount is determined based on "what the plaintiff is claiming and thus the amount in controversy between the parties."). As noted in Verizon's Notice of Removal, these mobile content charges amount to more than $13 million — far greater than the $5 million threshold required to establish federal jurisdiction under CAFA. (Declaration of Bill Medrano, attached to Notice of Removal, January 17, 2008.) That the amount in controversy exceeds the required threshold is even clearer given that Plaintiff also attacks all of mBlox's mobile content charges relating to carriers other than Verizon. (Compl. ¶¶ 19, 21, 43, 50, 59-80.)

### B.     The Complaint Places More Than $5 Million in Controversy Even if Plaintiff Does Not Challenge Verizon's Entire Billing System for Mobile Content

Even were Plaintiff able to avoid the allegations of her own Complaint that challenge the entire amount of Verizon's charges for mobile content in Illinois, she still could not avoid CAFA jurisdiction under the very standard she articulates. Notwithstanding the plain language of her

---

[1]   Moreover, the class-wide nature of Plaintiff's claims underscores that she challenges Verizon's mobile content billing system as a whole. If Plaintiff had intended only to challenge selected, unidentified charges as "unauthorized," the Court would be forced to engage in thousands of mini-trials to determine if each putative class member really wanted the mobile content in question. Of course, Verizon denies Plaintiff's broad challenge to its general system of billing for premium mobile content and will contend that any determination of whether individual class members' charges were unauthorized must be made on an individual basis, thereby precluding class treatment. However, as noted earlier (*supra* at 1), for purposes of this petition it is Plaintiff's allegations and legal theory alone that must be considered. *See Brill,* 427 F.3d at 449.

Complaint, Plaintiff now asserts that she "does not claim that the sum total of every premium text message fee ever charged to an Illinois Verizon wireless customer is unauthorized." (Mtn. at 4.)  Plaintiff argues that Verizon has not identified any "indicator" that would "reasonably approximate the amount of the unauthorized charges." (Mtn. 4-5.) (Emphasis omitted).  Plaintiff is mistaken.

In her Complaint, Plaintiff alleges that Verizon imposes unauthorized charges on wireless customers on a frequent and systematic basis.  For example, Plaintiff claims that "Verizon *routinely* process[es] charges for mobile content that have not been authorized by the charging party." (Compl. ¶ 20.) (Emphasis added.)  Elsewhere in her Complaint, Plaintiff asserts that "Verizon *frequently* charges customers for services that were never authorized." (Compl. ¶ 31.) Plaintiff also contends that "Verizon has for years been *systematically*, *repeatedly* and without authorization, billing its customers for purchase of products and services not agreed to by those customers." (Compl. ¶ 32.)

These broad allegations necessarily place more than $5 million in controversy based on compensatory damages alone.  If Plaintiff were to prove at trial that Verizon did bill customers — "routinely," "frequently," and "systematically" — for unauthorized mobile content charges, it is more likely than not that Plaintiff would recover more than $5 million, i.e., approximately 1/3 of the total mobile content charges.  This does not take into account Plaintiff's challenge to mBlox's substantial, additional charges related to carriers other than Verizon (which further increases the amount of compensatory damages at issue).  In addition, Plaintiff seeks attorneys' fees, which again increases the amount in controversy. *See Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933).  Taking into account the allegations against mBlox and Plaintiff's claim for attorneys' fees, Plaintiff clearly places at issue more than $5 million.

Plaintiff also seeks punitive damages.  (Compl. at 14.).  Contrary to Plaintiff's assertion in her Motion to Remand, punitive damages are considered part of the amount in controversy. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512-13 (7th Cir. 2006) (including punitive damages

in analyzing amount in controversy). Plaintiff's prayer for relief specifically requests an award of exemplary damages.

In general, under Illinois law courts have held that for purposes of assessing the amount in controversy, punitive damages are properly estimated at two to three times compensatory damages. *See Buller v. Owner Operator Indep. Driver Risk Retention Group, Inc.*, 461 F.Supp. 2d 757 (S.D. Ill. 2006) (finding amount in controversy satisfied under CAFA in view of "a constitutionally permissible award of punitive damages in a ratio of two or three times" out-of-pocket damages.) Illinois courts, however, have approved higher ratios with respect to punitive damages. For instance, in *Turner v. Firstar Bank, N.A.*, 363 Ill. App. 3d 1150 (2006), the plaintiff demonstrated that the defendant had a "systemwide" problem in its bill tracking system, and that it ignored the problem despite being aware that the system was only 50% accurate. *Id*. at 1155. Based on these facts — similar to what Plaintiff alleges here — the Illinois Court of Appeals noted that an award of punitive damages equal to ten times compensatory damages would be permissible. *Id*. (finding 20:1 ratio impermissible, but noting that 10:1 would have been permissible); *see also*, *Int'l Union of Operating Eng'rs, Local 150 v. Lowe Excavating Co.*, 225 Ill. 2d 456 (2006) (approving 11:1 ratio).

Given Plaintiff's repeated assertions of "willful" and "fraudulent" conduct, it is likely that Plaintiff would, at minimum, seek an award of punitive damages in an amount of three times compensatory damages. Based on this estimation, Plaintiff would only have to recover $1.25 million in compensatory damages — less than 8% of Verizon Wireless' total mobile content charges — to reach CAFA's jurisdictional threshold. Plaintiff cannot allege in her Complaint that Verizon "routinely," "systematically," "repeatedly" and "frequently" bills customers for unauthorized charges, as part of a "deliberate and willful scheme to cheat" large numbers of people, and then argue that remand is warranted because it is unlikely that as few as 8% of the mobile content charges were unauthorized.

Contrary to Plaintiff's assertion, the Seventh Circuit's decision in *Brill* actually *supports* Verizon's removal. In *Brill*, the plaintiff alleged that Countrywide violated the Telephone

Consumer Protection Act ("TCPA") by sending unsolicited fax advertisements.  427 F.3d 446,

448.  Under the TCPA, a "court may award $500 per fax, a sum that may be trebled if 'the

defendant willfully or knowingly violated'" the statute.  *Id*. (quoting 47 U.S.C. § 227(b)(3).)

Countrywide removed the action, conceding that one of its employees sent at least 3,800 fax

advertisements.  Based on that concession, Countrywide admitted to $1.9 million in statutory

penalties — still below the $5 million jurisdictional threshold.  The Court, however, held that

"Countrywide did all that is necessary" to establish $5 million in controversy by conceding that

an employee sent 3,800 faxes because, if plaintiff succeeded in establishing willfulness, the

damages would be trebled to $5.7 million.  *Id*. at 449.  In order to reach this conclusion, the

Court noted that the "complaint [did not] abjure trebled damages; it held open that possibility,

depending on the state of the proof."  *Id*.  The Court further observed that plaintiff's "Complaint

reads:  'if the evidence shows that the violation was willful, plaintiff requests trebling of the

damages.'"  *Id*.

Based on the Court's reasoning in *Brill*, Plaintiff's allegations are more than sufficient to

establish $5 million in controversy.  Clearly, Plaintiff does not "abjure" the possibility that most

of the mobile content charges are unauthorized.  To the contrary, Plaintiff strenuously insists that

Verizon imposes unauthorized charges on a routine, frequent, and systematic basis.  (Indeed, as

noted above, the Complaint challenges all of the charges.)   Based on these broad allegations, "a

recovery exceeding $5 million for the class as a whole is not 'legally impossible.'"  *Id*. at 449.

Accordingly, even if she challenges less than all of the mobile content charges billed to

Illinois wireless subscribers, Plaintiff's action places more than $5 million in controversy.

### III.     PLAINTIFF MAY NOT RECOVER FEES OR COSTS BECAUSE VERIZON HAS AN OBJECTIVELY REASONABLE BASIS FOR REMOVAL

Plaintiff seeks an award of attorneys' fees and costs under 28 U.S.C. § 1447(c) because

"Defendant's removal lacked an objectively reasonable basis for seeking removal."  (Mtn. at 7.)

This argument presumes — incorrectly, as demonstrated above — that removal was improper.

28 U.S.C. § 1447(c) (permitting an award of costs and fees upon issuance of "[a]n order remanding the case"). Moreover Plaintiff has not established — and cannot — that Defendant's removal lacked an objectively reasonable basis.

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked *an objectively reasonable basis* for seeking removal. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005); *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007) ("the district court erred by awarding the plaintiffs' attorneys' fees because Pfizer's attempt to remove the case under CAFA was objectively reasonable."). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin*, 546 U.S. at 141. The Supreme Court has explained the policy rationale underlying such fee awards:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Franklin Capital*, 546 U.S. at 140. The "objectively reasonable" standard ensures that defendants do not "choose to exercise this right only in cases where the right to remove is obvious. . . . [T]here is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases." *Id.* at 140. Courts often refuse to award attorneys fees *even after* granting a motion for remand. *See e.g.*, *Lott*, 492 F.3d at 793-94 (granting motion to remand but denying request for fee award).

As outlined above, Plaintiff's own allegations place in controversy all mobile content charges to Verizon wireless subscribers in Illinois — i.e., over $13 million. Moreover, the Complaint alleges that Verizon imposes such charges, "routinely," "frequently," and "systematically." Taking into consideration her prayer for punitive damages, should Plaintiff succeed in showing that the conduct at issue warrants imposition of such damages, she would only have to recover a small fraction of the total mobile content charges billed to Verizon

customers in order to meet the $5 million threshold.  In light of these allegations and evidence presented by Verizon, there is clearly an objectively reasonable basis for removal.

Therefore, Plaintiff is not entitled to any award of attorneys' fees under 28 U.S.C. § 1447(c).

## CONCLUSION

For all of the reasons stated above, Verizon requests that the Court deny Plaintiff's motion to remand.

Dated:  March 12, 2008

Respectfully submitted,

CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS

By:     s/Abigail A. Clapp
        One of Its Attorneys

James G. Richmond (ARDC 6206371)
Abigail A. Clapp (ARDC 6269540)
GREENBERG TRAURIG, LLP
77 West Wacker Drive
Suite 2500
Chicago, IL  60601
Tel.    (312) 456-8400
Fax     (312) 456-8435

*Of counsel:*

Penelope A. Preovolos
Dan Marmalefsky
Geoffrey Graber
MORRISON & FOERSTER
425 Market Street
San Francisco, CA  94105
Tel.    (415) 268-7000
Fax     (415) 268-7522

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 12th day of March served a copy of the within and foregoing ***DEFENDANT CELLCO PARTNERSHIP'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND*** upon all parties to this matter by the Court's electronic filing system to the following:

**Jay Edelson**
Email: jay@blimlaw.com
**John Blim**
Email: john@blimlaw.com
**Myles P. McGuire**
myles@blimlaw.com
Blim & Edelson, LLC

**Chung-Han Lee**
chunglee@wildman.com
**Brent R. Austin**
austin@wildmanharrold.com
**Craig M. White**
white@wildmanharrold.com
Wildman, Harrold, Allen & Dixon LLP


By:    s/Abigail A. Clapp
       One of Its Attorneys